**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-55 (EGS)** |
| **DOMINICK MADDEN** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Dominick Madden, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.[1]

Mr. Madden is a 44 year old dedicated, father, husband, and recently retired public servant. He is among the least culpable group of defendants who walked into the Capitol building, had no confrontation with law enforcement, and walked out with no incident after 13 minutes of walking around in non-sensitive areas. Most notably, he entered the building about an hour after the Capitol had already been breached and he had no idea about the chaos that had transpired until later that night when he watched the news. Mr. Madden has sincerely accepted responsibility for his conduct. Mr. Madden has already experienced the harshest sentence, and that is being forced to retire early from the career he loved and letting his family down. Based on all of the factors discussed below, Mr. Madden respectfully requests that the Court impose a period of probation of 12 months.

[1] Mr. Madden respectfully requests the right to respond to the government's position on sentencing once it is filed. On February 9, 2021, the parties requested a continuance of the sentencing memorandum deadlines, however have not yet received a response. Given that today is the defense deadline, Mr. Madden submits this memorandum but would like to reserve his right to respond to the government's position at a later time.

## BACKGROUND

Mr. Madden entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[2]" After the rally, Mr. Madden, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. Mr. Madden did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building. Mr. Madden will appear for sentencing on March 17, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required

[2] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

## II. Imposing a Sentence of Twelve Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

### a. Mr. Madden's Personal History and Characteristics

Mr. Madden was born in Brooklyn, New York, where he has resided for his entire life. His parents divorced when he was only two years old and he was primarily raised by his mother, who struggled financially however always made sure that her children had the basic necessities. Mr. Madden fortunately grew up in a tight knit, loving, and supportive family. He excelled in athletics in high school and graduated in 1995.

Mr. Madden met his current wife when he was 17 years old and still in high school. They have been together ever since and have three children. When Mr. Madden met his wife, she had a son already who was only a few months old. Even

at the young age of 17, Mr. Madden stepped in and became his father and has considered him to be his son ever since. That son, Christian, is now 27 years old and is on track to be a fireman as he is currently in the academy at the Fire Department.

After high school, Mr. Madden went to community college for a couple of months, however began working for the Local 79 Mason Tenders Union as a laborer so that he could support his family. Mr. Madden then went on to begin his public service as a sanitation worker for the New York Department of Sanitation. He served his community, collecting garbage from door to door, from the year 2000-2021. Mr. Madden was one of the sanitation workers that volunteered to work during the terrorist attack in New York city on 9-11 as well as when Hurricane Sandy devastated the city in 2012.

Mr. Madden loved his job, his community, and being able to take care of his family. He was respected in the community and he took much pride in serving it for twenty years. Unfortunately, his participation in the events on January 6, 2021, changed all of that. As soon as his department learned of his presence there, he was immediately forced to retire.

**b. Nature and Circumstances of the Offense**

Mr. Madden was arrested on January 21, 2021 for his involvement in events on January 6, 2021. That arrest and search of his residence was executed at his home, where his wife, children, and neighbors saw several FBI agents ascend onto

their property. Mr. Madden's embarrassment on this day has scarred him and putting his family through that is something he will never forgive himself for.

Mr. Madden went alone to the Capitol Building after being told that there would be a peaceful protest there after the rally.[3] The former President told his supporters that they would go down to the Capitol *together* as he said, "we're going to walk down to the Capitol."[4] So, Mr. Madden followed the enormous crowd down to the Capitol after the speeches were done. He entered the Capitol building at 3:00pm, long after the building was initially breached, and long after Congress had been evacuated. Mr. Madden did not see any of the violence that had occurred earlier in the afternoon. However, he acknowledges now that his behavior was inappropriate and that he knew he should not have entered a building when there were signs around that it was not permissible to enter.

While inside the building for 13 minutes, Mr. Madden did not have any confrontation with law enforcement, did not destroy any property, and had no idea what had transpired just an hour before he arrived. Mr. Madden was wearing a Q'Anon shirt, however he purchased this shirt on a whim before going to D.C., and

---

[3] For an hour, President Trump encouraged his supporters to "fight" for him. He said, "We will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will have an illegitimate president. That's what you'll have. And *we* can't let that happen…And *we* fight. *We* fight like hell. And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

[4] *Id.*

never invested in the group nor subscribed to their beliefs. Mr. Madden left the building and returned home to New York shortly thereafter.

This conduct was so completely out of Mr. Madden's good character that he has exhibited for the past 44 years. Everyone in the community who knows him respects him and admires him, including his former co-worker, Robert Reilly, who not only described him as a responsible and good worker but also admired "how he loved his family and always put them before himself." *See* Exhibit 1, Letter from Robert Reilly. Mr. Madden's neighbor, Igor Lev, also explains that he is good to him, his family, and everyone in the neighborhood. *See* Exhibit 2, Letter from Igor Lev. Mr. Madden's wife describes him as "the heartbeat, strength, and back bone of the family." *See* Exhibit 3, Letter from Lynn Madden.

After January 6, 2021, Mr. Madden has been nothing but embarrassed by his conduct. He never imagined the type of negative attention he would receive from the media and his local community. It was because of this scrutiny that he was forced to retire early from a successful career where he was loved and respected. Mr. Madden went without income from February 2020 – August 2020, the time it took for his retirement benefits to begin. His income was the sole income of the family and this loss turned his world upside down. Mr. Madden has always been able to provide for his family up until now and is ashamed that his conduct led to financial strife for the first time in their lives. Mr. Madden is only 44 years old and must now figure out a new career after 21 years.

Mr. Madden has expressed true remorse throughout this entire process and his continued remorse is further reflected in the letter he wrote to the Court. In his letter, he states:

> I would like to sincerely apologize to all the Congress men and women and all the members of the Senate that had to suffer through that horrific day…I will now make sure, more than ever before that I always fully think first and try my best to see the big picture before I act especially since my actions can and do affect so many lives.

*See* Exhibit 4, Letter from Dominick Madden. His family and friends also attest to how remorseful he has been and how contrary to his character this behavior was. *See* Exhibits 5-9.

**c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

The request for twelve months' probation acknowledges the need to promote respect for the law and provide just punishment. Mr. Madden concurs with the recommendation of United States Probation that 12 months' is sufficient but not greater than necessary to accomplish the goals of sentencing. *See* ECF No. 28. United States Probation also notes that rehabilitation is not a specific concern for Mr. Madden. *Id*. The likelihood of recidivism in this case is virtually non-existent given the 3553(a) factors, his success on supervision in the past year, as well as the fact that he has been more than specifically deterred from future similar conduct.

Furthermore, a sentence of 12 months' probation is in line with similar past sentences imposed. For example, in *United States v. Danielle Doyle*, 1:21-CR-324

(TNM), the court imposed a sentence of 2 months' probation. Like Mr. Madden, the defendant in that case walked through the building for about 20-25 minutes with no incident and left. However, Mr. Madden is less culpable than Mrs. Doyle because he did not climb through a broken window like Mrs. Doyle did. This case is more similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.[5]

This case can be distinguished from those who received lengthier periods of probation. For example, the Court in *U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN), imposed 36 months' probation for a defendant who had no criminal history, however showed a lack of remorse to the FBI during a recorded interview. In that case, the government recommended that the defendant serve two of those months on home detention, however the court imposed 60 hours of community service instead. In the instant case, Mr. Madden has served more than a year of supervision already and has been remorseful from day one. Similarly, in *U.S. v. Jordan Stotts*, 21-CR-272 (TJK), the court imposed 24 months' probation for a defendant who shouted at MPD officers and posted comments following January 6 suggesting he may not have been remorseful for his actions.

---

[5] *See also U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (sentenced to 24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (sentenced to 12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (sentenced to 12 months' probation).

Lastly, general deterrence has also been served as the whole world has already observed the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge. The advancement of technology and the rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. Given the global pandemic and the need to conduct hearings via video conference, the world can actually listen to what happens to defendants on a public call in line. There is no doubt that general deterrence has been served, especially in these cases where the public knows every detail and understands exactly what would happen to them if this behavior is ever repeated.

**CONCLUSION**

For the reasons stated above, Mr. Madden respectfully requests that the Court impose 12 months' probation. Mr. Madden also requests that a fine not be imposed in light of her obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

____________/s/______________
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550

Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org