UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | No.   21-cr-55 (EGS) |
| **DOMINICK MADDEN** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### DEFENDANT, DOMINICK MADDEN'S, REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

Dominick Madden, through undersigned counsel, submits this reply to the government's sentencing memorandum filed on February 24, 2022, in further support of a sentence of probation.

Based almost solely on the recent discovery of a new video made public, the government now asks the Court to impose a sentence of 60 days' of incarceration followed by 36 months' of probation.  *See* Gov't Sent. Memo, ECF No. 31.  Not only is the proposed sentence an illegal sentence, a period of incarceration is not warranted in this case, even in light of the newly discovered evidence.[1]

### I.   A Period of Incarceration Is Not Warranted

The government summarizes its reasons for requesting two months of jail time by alleging that (1) Mr. Madden was one of the first to "breach" the police line at the Lower West Terrace, encouraging others to go forward, (2) that he witnessed assaults on law enforcement, (3) attempted to destroy evidence when returning

---

[1] The defense was not made aware of this evidence until February 23, 2022, after counsel filed her sentencing memorandum on behalf of Mr. Madden on February 16, 2022.

1

home from the Capitol, and (4) that he did not express remorse until now. *Id*. at 2. The government's brazen accusations about his conduct on January 6, 2021, are an exaggeration of the truth. Further, its claims that Mr. Madden destroyed evidence and did not express remorse are false and violate his constitutional right against self-incrimination.

In this newly discovered video, Mr. Madden is seen on the Lower West Terrace amongst a large crowd of individuals while holding a flag running past police officers attempting to hold back the crowd. *See* Government Exhibits B and C. To say that Mr. Madden "breached" the police line is unfair as there was no physical contact made between him and officers and there was no physical barrier that he pushed through.[2] *Id*. Mr. Madden explains that he ran past the officers because the crowd he was among was being tear gassed and the crowd was so large and packed that he could not go backwards and could only go forwards. Mr. Madden is not excusing his behavior that day, however, the government's characterization is an exaggeration and speculates Mr. Madden's intentions. He also did not "encourage" others to go forward, other than at certain points waving his flag in the air. In fact, after passing the officers, he finds himself alone and appears as though he does not know what to do. *Id*. If he truly intended to charge the Capitol building, he would have kept going with full force rather than stopping.

The government's claim that Mr. Madden "destroyed evidence" when he returned home to New York is unsupported and pure speculation. There are a

---

[2] To "breach" is to "make a gap in by battering." *See* Merriam-Webster Dictionary (2022).

variety of reasons that someone would choose to discard clothing. Despite the government's speculation, at the time that he threw away his clothing, he was not aware that he was under criminal investigation and was under no obligation to keep those items. The reason he threw away his clothes was actually based on his wish to mentally distance himself from the mistake he made on January 6, 2021, as he felt embarrassed by his conduct. It was also inauguration day and he wished to move on with the new President and forget about his disagreements over the election. He had no intentions of hiding evidence from an investigation that he did not yet know existed. His cooperation with the investigation is exemplified by the fact that Mr. Madden cooperated with the search of his residence and the execution of his arrest warrant on January 21, 2021.[3] Despite the government's unjustified claim, he did not "get rid" of the phone he had on January 6, 2021. *See* Gov't Sent. Memo at 13. Mr. Madden was under no obligation to voluntarily provide the phone to the FBI nor was it ever requested by law enforcement. The government has no evidence that he destroyed it or hid it from law enforcement. Had he tried to get rid of the phone, the FBI would have found it in the bag of trash that contained his clothing.

    The government's claim that Mr. Madden did not express remorse for his conduct until the filing of the sentencing memorandum is not only false, but its suggestion is a violation of his constitutional rights as each defendant has the right against self-incrimination until they have made the choice of whether to exercise

---

[3] Mr. Madden would have surrendered voluntarily had he received a call from the FBI to do so.

3

their right to a trial or whether to enter a guilty plea.  The suggestion that he lacks remorse because he declined an interview with the FBI upon his arrest without a lawyer present is not proper as Mr. Madden had every right to exercise his right to remain silent.  After being assigned counsel and reviewing his discovery, Mr. Madden entered a guilty plea several months ago and admitted before the Court that he broke the law.  Pleading guilty in of itself is an acknowledgment of guilt and regret for criminal conduct.  He did not go on social media and make any statements suggesting he was not remorseful for his actions after January 6, 2021.  Most importantly, as a criminal defendant, he is under absolutely no obligation to implicate himself in a crime up until/if he enters a guilty plea.  His decision not to make a formal statement during his pre-sentence interview (which is never required) was based on the advice of counsel and is not an indication that he lacked remorse at any point in time.  Mr. Madden wrote a sincere letter to the Court expressing his remorse at the appropriate time in his case.  The government speculates that he did not express remorse up until now but is not privy to his private conversations with his lawyer, family, and friends.  The government's speculation is inappropriate and not based on any evidence.

Lastly, the government then tries to underscore the fact that Mr. Madden was peaceful while inside the Capitol building, arguing that "if he had committed acts of violence or engaged in property damage or destruction, he would be facing additional charges." *See* Gov't Sent. Memo at 12.  However, the government forgets its prior charging decisions as there are misdemeanor cases that have involved

defendants displaying assaultive and/or aggressive behavior.[4] So, it does matter for purposes of an appropriate sentence in this case whether Mr. Madden also displayed such behavior.

## II. To Justify Its Request for Incarceration, The Government Provides Past Cases That are Not Comparable to the Instant Offense and Its Prior Sentencing Recommendations Have Been Inconsistent

In support of its request for 60 days' incarceration, the government cites to past cases that are not comparable to the instant matter. *Id.* at 19. It first cites to *United States v. Camper*, 21-cr-325 (CKK), where the Court imposed a 90 day jail sentence for a defendant who gave a television interview after January 6, 2021, justifying his behavior under the "insurrection act." In that case, the government also had evidence that Camper buried his Go-Pro camera that had footage of his actions on January 6, 2021. Camper also had a criminal history spanning back several years. Camper is not comparable to Madden as he shares no similar characteristics or conduct and so this case should not be used to justify a 60 day jail sentence here. The government also cites to *United States v. Smith*, 21-cr-290 (RBW), however sentencing for that case is currently scheduled for March 15, 2022, and the sentence has not yet been imposed.

---

[4] *See United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history); *United States v. Jordan Stotts*, 21-CR-272 (TJK) (court imposed two months' home detention despite Stotts shouting at police and scaling wall to gain access to Capitol).

The remainder of the cases the government provides are inapposite because it relies on the premise that Mr. Madden destroyed evidence. *Id.* (citing to *U.S. v. Mazzoco*, 21-cr-54 (TSC), *U.S. v. Gruppo*, 21-cr-391 (BAH), and *U.S. v. Kostolsky*, 21-CR-197 (DLF).[5] In those cases, the government had some evidence to support their claim that those defendants intentionally deleted evidence. Here, the government's accusation is unsupported and based purely on speculation. Therefore, those cases are also not appropriate for comparison.

Lastly, the government has been entirely inconsistent with its own sentencing recommendations since the start of its prosecutions of January 6 defendants. Below are examples of past cases with equally or more aggravating conduct than the instant offense where the government requested lesser sentences:

- *United States v. Jessica Bustle*, 21-cr-238 (TFH): Government requested 36 months' probation with 3 months' home detention. The defendant in that case was extremely vocal on social media about being proud of her participation on January 6, 2021. She also observed broken windows, individuals being tear gassed, and later wrote on social media that a revolution was needed.

- *United States v. Mazzoco*, 21-cr-54 (TSC): Government requested 36 months' probation with 3 months' home detention after finding evidence that defendant deleted evidence, posted a statement

---

[5] Although Matthew Mazzocco received a sentence of 45 days' incarceration, the government actually requested 36 months' probation with 3 months' home detention.

expressing that the Capitol is "ours," and took a selfie in front of a group forcing their way into the Capitol building.

- *United States v. James Lollis*, 21-CR-671 (BAH): Government recommended 36 months' probation with 3 months' home detention. Also was on the Lower West Terrace and saw the chaos unfolding, brought a firearm to DC (but not to the Capitol building), shouted at police, and made post social media statements.

- *United States v. John Lolos*, 21-CR-243 (APM): Government recommended 30 days' incarceration where defendant had history of violence and celebrated that he participated in delaying the vote on January 6, 2021 and was removed from an airplane after the riot due to unruly conduct.

- *United States v. Leonard Gruppo*, 21-CR-391 (BAH): Government recommended 30 days' incarceration after finding evidence that he deleted all the evidence from his phone.

The above cases illustrate how inconsistent the government's recommendation is with regards to Mr. Madden. The request for such an excessive jail sentence in this case is not justified and would result in a sentencing disparity if imposed, especially in light of the 3553(a) factors outlined in the defense sentencing memorandum that the government fails to thoroughly address.

**III. <u>A Period of Incarceration Followed by a Period of Probation is Impermissible</u>**

7

In its sentencing memorandum submitted to the Court, without any prior notice to the defendant in his plea agreement, the government now claims that Mr. Madden can be sentenced to a period of incarceration followed by a period of probation. *See* Gov't Sent. Memo at 21-30. Contrary to the government's assertion, the Court is not authorized to impose both a sentence of incarceration and a sentence of probation in this case, and doing so would raise significant constitutional concerns. 18 U.S.C. § 3551; *see United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125 (Chief Judge Howell chose to not impose such a sentence after briefing provided to the Court). The plea agreement nowhere indicates or notifies Mr. Madden that he may be subject to both 6 months of incarceration and 5 years of probation. A correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *Torrens*, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration.

The only case the government cites that is applicable, *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009) (unpublished), misreads 18 U.S.C. § 3563(a)(3) and ignores 18 U.S.C. § 3551(b).[6] The sole court in this district to impose both

---

[6] It appears that the decision has not been cited by any court, according to a Lexis citing history search. Its analysis, issued on the papers without the benefit of oral argument, id.

8

incarceration and supervision for a petty misdemeanor, in *United States v. Virginia Spencer*, No. 21-cr-00147-2 (CKK), reconsidered its sentence and imposed an incarceration only sentence after briefing was provided to the Court.

The Office of the Federal Public Defender recently filed an Amicus brief in *U.S. v. Caplinger*, 21-CR-(PLF) that addresses these arguments in further detail as well as explaining why the rest of the cases the government cited in this case and *Caplinger* are not applicable to the instant issue. *See* ECF No. 53 attached as Exhibit 1. Mr. Madden adopts the same arguments made in *Caplinger* and requests that the Court reject the government's proposition that a petty offense can include a sentence of incarceration followed by a period of supervision.

Lastly, the government asserts that, at a minimum, the Court can impose intermittent confinement as a condition of probation. *See* Gov't Sent. Memo at 28. However, that is still considered a Bureau of Prisons sentence and is not permissible for the same reasons as discussed above. The Court does not have statutory authority to impose any sentence of imprisonment and probation for a petty offense regardless of what the incarceration is called. *See* Exhibit 1 at n.11.

For a petty offense, it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of

---

at 809, is inaccurate and not remotely persuasive for the reasons set forth in the pleadings in *Torrens*.

intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition of supervised release). A sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues. *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) supra at *2 (45 day condition of confinement violates statute).

## CONCLUSION

For the reasons discussed above, Mr. Madden requests that the Court reject the government's recommendation and impose a sentence of probation.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500